OPINION OF THE COURT
Betty D. Friedlander, J.
This is an appeal from a letter decision and order of the Town of Dryden Justice Court (Edward J. Newhart, J.), holding, in a summary eviction proceeding, that a mobile home park owner who wishes to increase lot rent upon the expiration of a current lease is not required to offer park tenants a one-year lease at the new rent and is entitled to collect the increased amount so long as he has given the requisite 90 days’ notice of the proposed increase.
The parties have stipulated to the facts to be considered on appeal. Appellant, the respondent in an eviction proceeding for nonpayment of rent initiated in the court below, is a tenant in a mobile home park owned by appellee. Appellant has been paying lot rent in the amount of $60 per month pursuant to a lease running from February 1, 1981 to January 31, 1982. Prior to the signing of the lease, appellant was given conditional notice of a $10 monthly rent increase to go into effect in 90 days if no lease was signed and in February, 1982 if appellant agreed to *142 sign the lease. Appellant signed the lease. At its expiration, appellant requested a new one-year lease, presumably at the new rent. She never received the new lease she had requested. Despite the absence of a lease after January 31,1983, she continued in occupancy of the lot, paying rent at the old rate of $60 per month from February, 1982 on. In May, 1982, appellee commenced eviction proceedings for nonpayment of full rent from February, 1982 on. The Dryden Town Court held that at the expiration of the 1981 lease appellee was not required to offer a second one-year lease, and that despite the absence of a lease appellant would be required to pay the full rent of $70 monthly from the time of the expiration of 1981 lease.
On appeal, appellant contends in essence that she is not required to pay the $10 monthly rent increase demanded by appellee. Appellant advances three interrelated arguments in support Of her contention. First, she cites Hankin v Armstrong, (109 Misc 2d 709, mod 113 Misc 2d 24 [App Term, 2d Dept]), for the proposition that the provision of section 233 of the Real Property Law, the so-called Mobile Home Owners’ Bill of Rights, requiring the owner of a mobile home park to offer tenants a minimum one year’s lease (Real Property Law, § 233, subd e) only makes sense as a form of tenant protection if it is construed to require one-year renewals at the expiration of the initial one-year lease. Second, appellant argues that the landlord’s failure to offer a renewal lease at the new rent should work a renewal of the original lease, at the original rent, as a matter of law, on equitable rather than statutory grounds. In advancing this argument, appellant asserts that section 232-c of the Real Property Law, another tenant-protective provision creating a month-to-month tenancy rather than a new term upon the landlord’s acceptance of a holdover tenant’s rent, should not be the mobile park holdover tenant’s exclusive means of protection against an overbearing landlord; in effect, appellant claims that the holdover tenant in a mobile home park should have a choice, claiming the protection of section 232-c of the Real Property Law when a month-to-month tenancy suits her or asserting implied rights under subdivision e of section 233 of the Real Property Law when a new term is more attrac *143 tive. For her third argument, appellant claims that the notice of increase she received, even before the original lease was signed, was in effect a form of leverage to get her to sign the original lease, and as such was neither permissible under section 233 (subd f, pars 1,2) — which prohibit arbitrary and capricious action in the guise of regulation on the landlord’s part — nor reasonably designed to give the 90 days’ notice required under section 233 (subd f, par 3, cl [c]). In cumulative effect, appellant’s arguments amount to a claim that her landlord’s failure to offer a renewal lease should be sanctioned by renewal of the old lease at the old rate, denying him the rental increase he claims pursuant to the notice given in January, 1981.
In opposition to appellant’s claim, appellee points out that appellee gave his tenant the requisite notice of increase fully a year before the increase was to go into effect; that the park owner has no obligation, under subdivision e of section 233 to offer a renewal lease once an initial one-year lease has expired, or once a rent increase is announced or implemented; that once the initial lease has expired, the protections available to a holdover tenant in a mobile home park are limited to the provisions of section 232-c, which create at most a month-to-month tenancy; and that any such month-to-month tenancy would presumably be at the increased rent requested by the landlord, so long as the tenant was properly notified of the increase pursuant to section 233 (subd f, par 3, cl [c]).
Upon consideration of the parties’ arguments, in light of the facts stipulated to, the court has determined that the decision and order of the Dryden Town Court must be modified on the law and remanded for inquiry into the relevant facts in accord with the instant decision. While this court agrees with the Town Court’s determination that, pursuant to subdivision e of section 233, appellant was not entitled to a renewed lease at the increased rent at the expiration of her initial one-year lease, it disagrees with the Town Court’s conclusion that, as a matter of law, appellee was entitled to rent in the increased amount from the date of expiration of the initial lease. On this point, this court agrees with the Town Court’s apparent conclusion that, having properly notified appellant of an upcoming *144 increase, pursuant to section 233 (subd f, par 3, cl [c]), appellee would be entitled, on the expiration of the requisite one-year lease, to treat appellant’s occupancy as a month-to-month tenancy upon the acceptance of rent, but it further concludes that any such tenancy would be subject to the rent increase of which appellant had been notified only if appellee accepted rent in the increased amount once the initial lease had expired. The stipulated facts not specifying the terms upon which appellee received appellant’s rent following the termination of the lease, the case must be remanded for determination of the facts relating to the receipt of rent after February 1, 1982.
The court bases its determination on a reading of the relevant provisions of sections 233 and 232-c. The court notes, specifically, that subdivision e of section 233 clearly requires the park owner or operator to offer his tenant a one-year lease and says nothing about renewals (cf. Hankin v Armstrong, supra, p 712). While in Hankin the Rockland County Court suggested that despite the statute’s silence as to renewal leases, the landlord must offer a new lease at the expiration of the initial term, at least if an increase in rent is desired, this court observes that the suggestion was merely dictum in the context of that case, which involved a landlord’s failure to offer an initial lease. The court also observes that the Appellate Term, reviewing the Rockland County Court’s determination in Hankin, specifically affirmed only the court’s finding that the illusory agreement the park owner offered to the tenants as an initial lease in that case did not comply with the requirements of section 233 of the Real Property Law, without making reference to the Rockland County Court’s suggestion that a lease renewal was implicitly required under subdivision e of section 233 (see Hankin v Armstrong, supra, p 712). Finally, the court notes that the only other court that appears to have construed subdivision e of section 233 concluded that the protection for tenants provided under that section was limited to the prevention of arbitrary expulsions during the first year of park occupancy only (see A.K.A.B. & E. Mobile Home Rentals v Marshall, 114 Misc 2d 622). Absent any clear legislative or common-law mandate to impinge further on the park own *145 er’s freedom to contract, this court cannot hold that a renewal lease is mandatory.
Having determined that appellee was not required to offer a renewal lease under the limited terms of subdivision e of section 233, and having turned to consider the tenant’s status upon the expiration of the lease, the court has examined the wording of section 232-c — which provides for the creation of a month-to-month tenancy on termination of a lease if the landlord accepts the holdover tenant’s rent — in the context of section 233, which specifies the additional rights of a mobile home park tenant. Based upon this examination, and specifically noting that section 233 does not expressly address the holdover tenant’s status, although it specifies conditions limiting the landlord’s powers during a mobile park tenancy and on the eviction of a mobile park tenant, the court has concluded that section 232-c is the exclusive provision defining a tenant’s status after the expiration of a lease, whether the tenant is a mobile park resident or the occupant of other forms of real property. Under section 232-c, then, a month-to-month tenancy will be created upon the landlord’s acceptance of rent; and both parties in the instant case having stipulated that rental payments were accepted following termination of the lease, there is no question that a month-to-month tenancy was created.
However, while the court notes that such a tenancy will be governed in general by the rules of law governing month-to-month tenancies, it further concludes that in the case of a mobile park tenant the rules will be modified by the requirements of section 233, including the requirement that tenants be given at least 90 days’ notice of rent increases, under section 233 (subd f, par 3, cl [c]), and concomitantly giving the tenant at least 90 days to remove if she objects to the increase (cf. Hankin v Armstrong, 109 Misc 2d 709, 712, supra).
In applying jointly the rules of law governing month-to-month and mobile park tenancies, the court notes, that, where a month-to-month tenancy arises by operation of law upon the landlord’s acceptance of rent at the termination of a lease, the holdover tenant may be held to rental increases of which she had been given reasonable notice *146 prior to the expiration of the lease (cf. Rita Knitting Mills v Seidler, 40 Misc 2d 725, and cases cited therein). The court also notes that section 233 (subd f, par 3, cl [c]) appears to superimpose upon this rule the requirement that mobile park tenants be given 90 days’ notice of increases, rather than merely reasonable notice. In the instant case, the court observes, appellee appears to have amply complied with the 90 days’ requirement by providing notice of an increase over one year before it was due to be implemented, and there is no reason to conclude that such notice was unreasonable or impermissible on the facts before the court. Hence appellee would appear to be entitled to demand rent in the increased amount from appellant, at the time appellant’s lease expired, as a holdover tenant who had received timely notice of the proposed increase.
However, the court also notes that, under section 232-c, a month-to-month tenancy at law is not created merely by the tenant’s holding over after an existing lease expires. Rather, under the terms of the statute, the holdover tenant must offer, and the landlord must accept, at least one rental payment after the lease’s expiration (cf. Sowalsky v MacDonald Stamp Co., 31 ÁD2d 582); if no payment is offered or accepted, no new tenancy is created, and the landlord’s remedy is to treat the tenant as a trespasser and not as a tenant in default (cf. Palagonia v Pappas, 79 Misc 2d 830). Moreover, as a corollary to the requirement that rent must be offered and accepted before a month-to-month tenancy is created, courts have consistently held that a landlord may not unilaterally create á new tenancy at an increased rental merely by serving the tenant whose lease is about to expire with a notice that his holding over will have the effect of increasing rent (cf. Jaroslow v Lehigh Val. R. R. Co., 23 NY2d 991), rather, it appears that the landlord must accept rent in the increased amount (cf. Farrell Lines v City of New York, 63 Misc 2d 542, affd 35 AD2d 788, affd 30 NY2d 76), or indicate that his acceptance of a lesser amount is receipt only of partial payment on account of rent (cf. Rita Knitting Mills v Seidler, supra). Further, while section 232-c provides that the rule creating a month-to-month tenancy upon acceptance of rent may be elided if the holdover tenant and her landlord provide *147 otherwise by agreement, either expressed or implied, and while appellee points out that appellant appeared to agree to the increase at the time she signed the initial lease, the Court of Appeals has concluded that the statutory exception to the rule articulated in section 232-c, by agreement of the parties, refers only to the duration of the tenancy, and not to the amount of rent to be paid (cf. Jaroslow v Lehigh Val. R. R. Co., supra). In effect, then, the landlord’s right to assess a rental increase under section 232-c arises not by operation of law or by implied agreement of the parties, but only by the fact of the landlord’s acceptance of rent in the increased amount.
Hence, in the instant case, the court cannot agree with the Town Court that appellee is entitled to his claimed increase as a matter of law; and the court notes that there is no evidence in the stipulated facts relating to the manner in which rent was demanded, paid, or received following the expiration of appellant’s lease. The court concludes that the case must be remanded to the Town Court for inquiry into the manner in which rent was offered and received after February 1, 1982 (cf. Sowalsky v MacDonald Stamp Co., supra), so that the court may determine the rental rate at which a month-to-month tenancy was created following the expiration of appellant’s 1981 lease.